UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **KEVIN D. JONES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-00016-SNLJ |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **ACTING COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

The Acting Commissioner of Social Security denied plaintiff Kevin D. Jones' application for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act. Plaintiff now seeks judicial review. [Doc. 1.] As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.   Facts**

Plaintiff Jones was born in 1970. He testified that he had previous work experience as a cake mix inspector, trash detailer, and machine operator. He testified that he attended eighth grade in school and has obtained his GED. He originally alleged his disability began on April 21, 2017, but at the Administrative Law Judge (ALJ) hearing he revised his alleged disability onset date to May 1, 2020. He has not been employed since his revised alleged disability onset date.

In 2016, prior to the onset of his presently alleged disability, plaintiff injured his lumbar spine at work. He filed a Workers' Compensation claim for this injury, which claim is still pending. As part of this process, plaintiff was evaluated by multiple medical personnel, some of whose records and opinions are included in the transcript of the present case.

In this case, plaintiff alleges multiple impairments. He testified his most severe impairment is lower back pain and numbness in his right leg and foot. He additionally claims, *inter alia*, that he is in constant pain, has difficulty sitting or standing for long periods of time, can walk only approximately 25 feet without needing a break, can only lift or carry 10 pounds, has difficulty balancing, becomes dizzy when exposed to extreme heat due to his blood pressure medication, becomes drowsy due to his medications, and sometimes has difficulty remembering things. [Tr. 50–55.] According to his January 2021 function report, plaintiff's conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. [Tr. 317.] During plaintiff's ALJ hearing, his attorney alleged severe impairments of chronic low back pain, degenerative disc disease with herniation and radiculopathy, hypertension, and hyperlipidemia. [Tr. 46.]

Plaintiff lives at home alone. He states he is able to shower, however he cannot stand to dress himself and requires about 20 minutes to shave due to his pain. He claims he is able to prepare simple meals such as sandwiches and frozen dinners, and that he cannot stand long enough to cook a meal that requires more time. He states he does his own laundry, mows his own lawn, cleans, and does limited housework. He claims he is able to drive a car, shop, and manage his finances. [Tr. 312 –18.]

2

Plaintiff applied for disability insurance benefits and supplemental security income on August 5, 2020.  He was denied initially on December 26, 2020, and upon reconsideration on March 11, 2021.  He filed a request for a hearing, which was held on December 13, 2021.  The ALJ issued an unfavorable decision on April 11, 2022.

**II.    Disability Determination — Five Steps**

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§

3

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016).  Thus,

4

"there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id*.  At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

5

### III. The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and he has not engaged in substantial gainful activity since the amended alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments: lumbar degenerative disc disease with mild radiculopathy, osteoarthritis in his bilateral hips, and obesity. [Tr. 20.] At Step Three, the ALJ determined plaintiff's severe impairments did not meet or equal a listed impairment.

Next, in Step Four, the ALJ determined plaintiff's RFC. The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs. The claimant can frequently balance, kneel, crouch and crawl, but only occasionally stoop. He can have no concentrated exposure to vibration or hazards such as unprotected heights.

[Tr. 22.] In reaching this conclusion, the ALJ considered plaintiff's symptoms, the extent to which those symptoms are consistent with the available evidence, the available medical opinions, and prior administrative medical findings. *Id.* Based on this RFC determination and the testimony of the vocational expert, the ALJ concluded that plaintiff could perform his past work as a cake mix inspector.

Because the ALJ determined that plaintiff could perform some of his past relevant work, proceeding to Step Five of the sequential evaluation process was not strictly necessary. Nonetheless, the ALJ found in the alternative that plaintiff had the RFC to perform work that exists in significant numbers in the national economy. Once again

6

relying on the testimony of the vocational expert, the ALJ concluded that plaintiff had the RFC to work in the occupations of dining attendant (with 430,000 jobs nationally), retail clerk (with 4,000,000 jobs nationally), and janitor (with 900,000 jobs nationally). [Tr. 29–31.] Consequently, the ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Tr. 31.] Thus, the ALJ found that plaintiff was not disabled and denied his claim.

### IV.   Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment

for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). "[The Court's] task is not to reweigh the evidence, and [the Court] **may not** reverse the Commissioner of the Social Security Administration's decision merely because substantial evidence would have supported an opposite conclusion or merely because [the Court] would have decided the case differently." *Harwood v. Apfel*, 186 F.3d 1039, 4042 (8th Cir. 1999) (emphasis added).

## V.     Discussion

Plaintiff correctly noted in his briefing that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." [Doc. 22 at 4] (quoting *Richardson v. Perales*, 402 U.S. 389, 400–401 (1971)). The ALJ is obligated to have "develop[ed] the record fully and fairly" in plaintiff's proceeding. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137–38 (8th Cir. 1998). A plaintiff also "bears a heavy burden in showing the record has been inadequately developed. He must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 Fed. Appx. 200, 204 (8th Cir. 2007). Nonetheless, if this Court finds the ALJ failed to properly develop the record, the case must be remanded.

Plaintiff contends that the ALJ failed to properly develop the record for multiple reasons. First, plaintiff argues that the ALJ erred in crediting some of the medical opinions found in the record, particularly those from Doctors O'Day, Murray, and Coyle, who evaluated—among other alleged ailments—plaintiff's lower back pain. [Doc. 22 at

8

6.] Plaintiff argues that it was an error for the ALJ to rely on these doctors' opinions in reaching her RFC determination, because when these doctors issued their opinions, they were unaware of plaintiff's later diagnosis of plaintiff's osteoarthritis in his hips, diagnosis of L2 nerve root impingement, or other positive clinical findings from plaintiff's treating physician. *Id.* at 6–7. Plaintiff also correctly notes that some of the medical evidence in the record comes from doctors who were enlisted to evaluate the extent of plaintiff's injuries in relation to his 2016 Workers' Compensation claim.

Of course, the mere fact that a doctor evaluated plaintiff in the context of his 2016 Workers' Compensation injury or prior to the updated clinical findings does not *ipso facto* render his clinical findings invalid. Plaintiff, however, contends that in this case such opinions are "'stale.'" *Id.* at 6 (quoting *Ivey v. Comm'r of Soc. Sec.*, No. 1:19-CV-00657 EAW, 2020 WL 504626, at *4 (W.D.N.Y. Aug. 27, 2020)). Plaintiff argues that the later diagnostic findings of osteoarthritis, L2 nerve root impingement, and positive clinical findings from plaintiff's treating physician "'changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment.'" *Id.* (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)).

That argument fails. "When assessing a claimant's RFC, the ALJ ***must*** consider ***all*** relevant evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (emphases added) (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)). In a case such as this where the plaintiff claims his lower back pain is his "most severe impairment," doctors' assessments of his lower back pain are facially relevant. [Tr. 50.] Moreover, plaintiff overestimates the degree to which the updated clinical findings are

9

contrary to the medical opinions issued prior to such findings.  Plaintiff would have the Court conclude that because some of the medical opinions were issued without knowledge of plaintiff's osteoarthritis, L2 nerve root impingement, or positive clinical findings from his treating physician, such opinions are so unreliable that they can provide no meaningful information about plaintiff's medical condition.  But that is far too extreme a conclusion.  Surely it is the case that in certain situations a later medical opinion can render an earlier one obsolete.

But here, the updated clinical findings provide critical information to plaintiff's record that *supplements* the prior opinions, rather than *invalidates* those opinions.  Without question, the ALJ must—and did—consider the earlier findings *in light of* the updated findings when making her RFC determination.  But the earlier medical opinions still provide insight into plaintiff's multifaceted allegations of disability.  After all, this is a case in which plaintiff alleges multiple impairments, including back problems, leg problems, hip problems, and foot problems.  Accordingly, the earlier medical opinions, though insufficient insofar as they do not account for the entirety of plaintiff's medical situation, nonetheless are relevant and valuable data points for determining plaintiff's RFC.  The ALJ understood this, and she evaluated the reliability of the earlier medical opinions in light of the updated clinical findings.  Consequently, the Court concludes the ALJ committed no error by factoring into her RFC determination medical opinions issued prior to or without knowledge of plaintiff's osteoarthritis, L2 nerve root impingement, or positive findings from his treating physician.

Plaintiff further argues that the ALJ failed to properly develop the record because she failed to "obtain[] a medical opinion, from a medical expert or a consultative examiner, to support her RFC assessment," and that "the ALJ points to no evidence, 'providing a basis for the specific conclusion that [plaintiff] can stand or walk for 6 hours in an 8-hour workday,' as required by light work." [Doc. 22 at 7] (quoting *Noerper v. Saul*, 694 F.3d 738, 746 (8th Cir. 2020)). This argument is based on the faulty premise that the ALJ's RFC determination must be supported by a medical opinion. "Although the residual functional capacity (RFC) is a medical question and must be supported by some medical *evidence*, 'there is no requirement that an RFC finding be supported by a specific medical *opinion*.'" *Kelly v. Kijakazi*, No. 4:20-cv-889-RWS, 2021 U.S. Dist. LEXIS 170028, at *9–10 (E.D. Mo. Sept. 8, 2021) (emphases added) (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). Even so, plaintiff's contention is demonstrably false; the ALJ *did* obtain medical opinions from Doctors O'Day, Murray, and Coyle in reaching her RFC determination. And each of those doctors explicitly states that plaintiff can stand or walk for six hours in an eight-hour workday. [Tr. 72, 87, 89.]

Even if the Court construes plaintiff's argument to be that the ALJ had a duty to develop the record by obtaining more medical evidence (rather than a new medical opinion) to support her RFC determination, that argument also fails. "An ALJ is required to obtain additional medical evidence if existing evidence is insufficient to determine disability. 'But an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Lehnartz v. Barnhart*, 142 Fed. Appx. 939, 943 (8th Cir. 2005)

11

(internal citations omitted) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)) (citing 20 C.F.R. § 404.1527(c)(3)).

The record in this case provides a sufficient basis for the ALJ's decision. In reaching that decision, the ALJ considered plaintiff's statements, copious and comprehensive objective medical evidence, and opinions from multiple physicians. [Tr. 22–29.] The ALJ acknowledged plaintiff's statements of severe pain and limitations, but reasonably evaluated such statements to be at odds with the objective medical and opinion evidence. In particular, the ALJ noted the clear disparity between plaintiff's claims of severe discomfort and the repeated findings by physicians that plaintiff was in only mild or no acute distress and exhibited a relatively normal gait. [Tr. 29, 486–87, 576–77, 702, 707, 734–35, 738, 749–50, 756–57, 764.] The ALJ also took note that Doctor Andrew Wayne believed plaintiff might have been magnifying his symptoms. [Tr. 24, 552.] Doctor O'Day came to the same conclusion. [Tr. 71, 78.]

As already stated, the ALJ further supported her conclusion with medical opinion evidence that suggested limiting plaintiff to light work. [Tr. 26–29.] With respect to the later medical opinions that suggested greater restrictions to plaintiff's capabilities, the ALJ analyzed them and explained the extent to which they were or were not supported by objective evidence or consistent with other findings. *Id.* It is not the task of this Court to now reweigh this evidence. *See Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) ("We do not reweigh the evidence presented to the ALJ"). Consequently, this Court concludes that the ALJ had sufficient bases for reaching her RFC determination, and she thus was not obliged to obtain more medical evidence.

12

The Court also notes that, without negating the ALJ's obligation to develop the record, plaintiff "has the responsibility to provide medical evidence demonstrating the existence of an impairment and its severity during the period of disability…" *Jones v. Berryhill*, No.1:17-cv-162-NAB, 2018 U.S. Dist. LEXIS 156104, at *5–6 (E.D. Mo. Sept. 13, 2018) (citing 20 C.F.R. § 404.1512).  Plaintiff had an opportunity to develop the record further, but apparently chose not to.  Even though Doctor Wayne recommended a follow up appointment for a functional capacity evaluation, he did not attend because—according to Doctor Wayne's report—his "attorney did not want him to have it done." [Tr. 713.]

**VI.   Conclusion**

The standard of review is whether substantial evidence supports the ALJ's findings, not whether substantial evidence supports contrary findings. *See England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) ("If substantial evidence supports the decision, we will not reverse, even if substantial evidence could have been marshaled in support of a different outcome.") (citation omitted).  The ALJ relied on evidence that a "reasonable mind" would accept as adequate to support the conclusion that plaintiff could perform work with significant numbers in the national economy. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Plaintiff also failed to meet his "heavy burden" to show that the record was underdeveloped.  *Combs*, 243 Fed. Appx. at 204.  Contrary to plaintiff's contention, the medical records and opinions predating his diagnosis of osteoarthritis, diagnosis of L2 nerve root impingement, and positive treating physician findings were not stale.  In

reality, they provided relevant, valuable insight into plaintiff's medical condition. And in any event, the ALJ evaluated such records and opinions in light of the record as a whole, which included the updated clinical evidence. Plaintiff's other arguments that the ALJ did not properly develop the record fail, as the evidence shows that the record contained sufficient evidence for the ALJ to reach her conclusions.

Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [Doc. 1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 22nd day of July, 2024.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE